UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States District Court
Southern District of Texas
FILED

MAR 2 3 2010

David J. Bradley, Clerk of Court

SHELTON R. MODELIST, ET AL.
      Plaintiff(s)
VS

CIVIL ACTION NO _____

GRAY MILLER, LINDSAY L. LAMBERT,
CHALISE R. STOVALL, MICHAEL GOMEZ,
R. DWAYNE DANNER, HILLARY GREEN,
LINDA STOREY, TIFFANY R. MOONEY,
COUNTRYWIDE HOME LOANS, INC., BANK
OF AMERICA HOME LOANS, REX L. KESLER
SAMUEL B. KENT AND AAMES FUNDING
CORPORATION; A/K/A DEUTSCHE BANK
NATIONAL TRUST COMPANY, ACCREDITED
HOME LENDERS, INC., ET AL.,
      Defendant(s)

# 10 CV - 955

## PLAINTIFF(S) ORIGINAL COMPLAINT

### I. JURISDICTION AND VENUE

1.    This is a civil action authorized by 42 U.S.C. Section 1983 to redress the "Deprivation", under color of federal authority (Federal Law) and under color of state law (State Law), of "Rights" secured by the Constitution of the United States. This Court has jurisdiction under 28 U.S.C. Section 1331 and 1343. Plaintiff(s) seeks Declaratory Relief, pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff(s) claims for injunctive relief, are authorized by 28 U.S.C. Section 2284 and the Federal Rules of Civil Procedure, Rule 65 and Plaintiff(s) seeks, compensatory and punitive damages.

2.    The United States District Court for the Southern District of Texas, Houston Division is the appropriate venue under 28 U.S.C. Section 1391 because it is located, where the events giving rise to these claim(s), occurred.

**"Plaintiff(s), by reference incorporates, all herein, exhibit(s) and statement(s)".**

## II. PLAINTIFFS

3.     Plaintiff, Shelton Robert Modelist, is and was at all times mentioned herein, citizen of, United States and Texas, whom presently reside at 5619 Lakefield Drive in Houston, Texas 77033, which also includes his Descendants and Dependant Spiritual Affiliations and or Associations.

## III. DEFENDANTS

4.     Defendant, Gray Miller, a presiding judge for the United States District Court for the Southern District of Texas, Houston Division, whose office is located at 515 Rusk, 9th Floor Suite # 9136, Houston, Texas 77002.

5.     Defendant, Lindsay L. Lambert, an attorney at law, whose office is located at Three Allen Center, 333 Clay, 29th Floor Houston, Texas 77002.

6.     Defendant, Samuel B. Kent, can be served, at United States District Court, Clerk Office, at 601 Rosenberg, Suite 411 Galveston, Texas 77550.

7.     Defendant, Countrywide Home Loans, Inc. an alleged foreign corporation, whose registered agent, CT Corporation System, is located at 350 North St. Paul Street, Suite # 2900, Dallas, Texas 75201.

8.     Defendant, Aames Funding Corporation, a.k.a. Accredited Home Lenders, Inc., an alleged foreign corporation; and Deutsche Bank National Trust Company, an alleged "corporation", alleged, "to be duly authorized to do business under the laws of the State of Texas", who is not registered, nor has a registered agent no where. Accredited Home Lenders, Inc., registered agent, CT Corporation System, is located at 350 North St. Paul Street, Suite # 2900, Dallas, Texas 75201.

9.     Defendant, Bank of America Home Loans, an alleged foreign corporation, registered agent, CT Corporation System, is located at 350 North St. Paul Street, Suite # 2900, Dallas, Texas 75201.

10.     Defendant, Chalise R. Stovall, an attorney at law, whose office is located at 15000 Surveyor Boulevard, Suite # 100, Addison, Texas 75001.

11.     Defendant, Michael Gomez, the presiding judge of the 129th District Court of Harris County, Texas, whose office is located at 201 Caroline, 10th Floor Suite # 1000, Houston, Texas 77002.

12.     Defendant, R. Dwayne Danner, an attorney at law, whose office is located at 2711 N. Haskell Avenue, Suite # 2700, LB 25 Dallas, Texas 75204.

13.     Defendant, Hillary Green, the Justice of the Peace of Harris County, Precinct 7, Place 1, whose office is located at 5737 Cullen Blvd., Houston, Texas 77021.

14.     Defendant, Linda Storey, the presiding judge of the Harris County Civil Court at Law No. Three (3), whose office is located at 201 Caroline, 3rd Floor Suite # 300, Houston, Texas 77002.

15.     Defendant, Tiffany Mooney, an attorney at law, who is located at 7676 Hillmont, Suite # 206 Houston, Texas 77040.

16.     Defendant, Rex L. Kesler, an attorney at law, whose office is located at 14202 Champion Forest Dr., Houston, Texas 77069.

17.     Each Defendant is sued individually and in their personal and official capacity. At all times mentioned in this Complaint each Defendant acted in concert, with each other, "under color of federal authority" and or "under color of state law".

## IV. FACTS

18.     On about 21 September 2001, Plaintiff(s) was deceived by Defendants, Aames Funding Corporation ("Aames") and Countrywide Home Loans ("Countrywide") to believe and accept a "naked assertion", which alleged and asserted that Plaintiff(s), lien free real property, if mortgaged, "could only be foreclosed upon, with a court order" (judicial declaration). Plaintiff(s) relied on such assertions and executed a Texas Home Equity Loan, on about 21 September 2001, against, lien free real property located, at 5619 Lakefield Drive, Houston, Texas 77033 ("subject real property"). The loan was executed pursuant to "Notice Concerning Extension of Credit Defined by Section 50(a)(6), Article XVI, Texas Constitution", with the Home Equity First Lien and Security Instrument, being held by Defendant Aames.

19.     Plaintiff(s) Texas Home Equity Loan and Note was subjected to a 'Texas Home Equity Security Instrument" that provided a foreclosure procedure governed by the Texas Constitution and Rule 736 of the Texas Rules of Civil Procedure ("TRCP"). Plaintiff(s) paid his monthly payments according to the agreed Note. Plaintiff(s) was never in default in respect to his contracted monthly payments toward the Note. The Harris County Seat, its commissioners and judiciary has been host arena, for the fraudulent deprivation(s) and taking, under the guise of official right, committed by all named Defendant(s), involving this case and others.

20.     On about 25 September 2001, the said Note was allegedly transferred, by Defendant Aames to the phantom entity Defendant Deutsche Bank National Trust Company ("Deutsche Bank"), C/O Countrywide. However, the records of the District Clerk of Harris County reflect an "Assignment of Deed of Trust", reciting that Plaintiff(s) original Security Instrument having been filed on about 03 October 2001, some eight (8) days after the execution of Defendant(s) Deutsche Bank, "Assignment of Deed of Trust", which allegedly, was executed on 25 September 2001, but not actually filed, until 29 April 2002. Thereby, Plaintiff(s) original Security Instrument was transformed into a "Deed of Trust" by Defendant(s), with the intent to wrongfully deprive Plaintiff(s) of their property without due process of law. Defendant(s) "Assignment of Deed of Trust" was a deceitful misappropriation of Plaintiff(s) real property, thereby showing Defendant Deutsche Bank the owner of Plaintiff(s) **past** Home Equity Loan and expired Lien. Such schemes by the Defendant(s) were perpetrated so that any liability for misconduct, of any kind, would be directed at the phantom entity and shield Defendant Deutsche Bank, instead of Defendant(s) Aames or Countrywide.

21.     On about 30 October 2003, Barrett Burke Wilson Castle Daffin & Frappier, L.L.P. ("Barrett Burke"), acting in concert, with all named Defendant(s), sent Plaintiff(s) an illegal Notice of Acceleration, without valid cause, on behalf of Defendant(s) Aames, Countrywide and Deutsche Bank, under File No. 20030031405205. The statute of limitation accrued on the date of said Notice of Acceleration. *See Exhibit(s) 2* attached hereto. However, the default alleged by Defendant Countrywide never existed, nor occurred.

22.     On about 10 January 2007, attendant to U.S. Civil Action No. H-05-1180, Defendant, Lambert filed a motion for leave to file counter-claim authorizing foreclosure without personal liability against Plaintiff(s) and subject real property. Defendant Lambert knew that he was without standing to file the said motion, in that Defendant(s) pleadings did not comply with TRCP, Rule 736, setting forth the procedural requirements for court order under "Expedited Foreclosure Proceedings". *See Exhibit(s) OO and 3A* attached hereto. The said motion was granted on 09 March 2007, without authority. Plaintiff(s) Texas Home Equity Security Instrument clearly states, "Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for Expedited Foreclosure Proceedings", currently being Rule 736, which was the subject matter, attendant to the motion filed by Defendant(s). *See Exhibit(s) 3A* attached hereto, at section 21, pp. 11 and par. 2.

23.     On about 29 November 2007, Defendant Kimberly Buteaud, on behalf of Barrett Burke, filed their second foreclosure application, after, expiration of subject real property contract lien. Plaintiff(s) filed a Petition to challenge said application, on 26 December 2007, under Cause No. 2007-77460, in the 61st District Court Harris County, Texas. Defendant(s) removed, said case from state court, to their safe haven under then indicted, currently "convicted" and fictitious, U.S. District judge Samuel B. Kent. Thereby, this Racketeering Conspiracy further unfolds, exposing the crystal clear objective of "Deprivation" of Plaintiff(s) "Liberty and Property". Therefore, providing conduit for the void judgment entered on 05 September 2008, by Defendant Kent and predicated on Defendant Miller void judgment entered 15 January 2008, subsequently, Defendant Kent judgment, also void. **"The Jim Crow, South, Klan Lives".**

24.     On about 15 January 2008, attendant to U.S. Civil Action No. H-05-1180, Defendant Miller, acting in the clear absence of all jurisdiction entered a Amended Final Judgment, granting Defendant Lambert, an order, authorizing foreclosure in respect to Plaintiff(s) subject real property, over Plaintiff(s) objections. *See Exhibit (C)* attached hereto. Defendant Miller action, granting Defendant Lambert motion and ordering foreclosure was unauthorized, in that the Defendant(s) lacked subject matter jurisdiction due to the expiration of the limitation period and refusal to follow, "due process" pursuant to. TRCP Rule 736. The acceleration of the note occurred on about 30 October

2003, making 30 October 2007, the expiration date, of past contract lien and the said judgment, **"void"**.

26.     On about 03 June 2008, as a result of the heretofore complained of and concerted actions, all above named Defendant(s) with Defendant Kesler, acting in concert with all named Defendant(s), used the void Amended Final Judgment entered by Defendant Miller on 15 January 2008, to knowingly misappropriate Plaintiff(s) subject real property, with intent to deprive Plaintiff(s) of their property. *See Exhibit(s) 1* attached hereto. Defendant Kesler illegal sale of Plaintiff(s) subject property, predicated on said void judgment, making, said sale, thereby, **also void**. Further, Defendant Kesler, refused to provide a valid notice to Plaintiff(s) regarding the sale of Plaintiff(s) subject property, by refusing to sign the Notice of Substitute Trustee Sale in accordance with the requirements of Texas Property Code § 51.002. *See Exhibit(s) CC* attached hereto.

26.     On about 21 June 2008, Plaintiff(s) notified the State of Texas, concerning the Jim Crow proceeding(s) against Plaintiff(s), pursuant to, Business and Commerce Code chapter 17 § 17.47. The State of Texas refused to intervene. Refusal by Defendant Greg Abbott, to intervene, verified, the naked assertions, attendant to, Texas Constitution, Article XVI, § 50(a)(6).

27.     On about 01 July 2008, an original Petition for Forcible Detainer was filed by Defendant Stovall, on behalf of Defendants Barrett Burke, Countrywide and Deutsche Bank, a non-existent entity, to take Plaintiff(s)subject real property. The petition was subsequently docketed and filed in Defendant Hillary Green's Court, Case No. EV71C0034932. The petition filed by Defendant Stovall was filed outside, the statute of limitations, and stemmed from the concerted actions, of all above named Defendant(s) and the void judgment entered by Defendant Miller on 15 January 2008. Defendant Green, acting in concert with all above named Defendant(s), in the clear absence, of all any jurisdiction, conducted a trial on 28 August 2008, in respect to Defendant Stovall, petition. Defendant, Green rendered a judgment in favor of all named Defendant(s), **over Plaintiff(s) objections.** The judgment rendered by Defendant Green was unauthorized. Defendant Green lacked subject matter jurisdiction, on the bases, of limitations and said trial and judgment, being predicated on actions, stemming from the void judgment entered by Defendant Miller attendant to Civil Action No. H-05-1180. Plaintiff(s), timely

appealed the void judgment, on 04 September 2008, rendered by Defendant Green and incurred, an extortion fee, in the amount of seven hundred and sixty dollars ($760.00), plus cost.

28.     On about 05 September 2008, Defendant Samuel B. Kent, while working in concert with all above named Defendant(s), entered his void judgment predicated on the void judgment entered on 15 January 2008, by Defendant Miller. The said void judgment entered by Kent was based on the theory of *res judicata* and was in response to Defendant(s) Aames; a.k.a., Accredited Home Lending, Inc. ("Accredited"), second foreclosure application. *See Exhibit(s) 2A* attached hereto. This second application, attempt, was to secure an illegal order to foreclose, the expired and past contract lien previously, against Plaintiff(s) subject real property.

29.     On about 12 November 2008, in Cause No. 926-859, Defendant, Linda Storey of the Harris County Court at Law Number 3, conducted a illegal hearing in respect to Plaintiff(s) appeal, of the **void** judgment rendered by Defendant Green, on 28 August 2008. The said hearing was requested by, then acting attorney, now Defendant, Kesler. During said hearing Defendant Kesler withdrew, as acting attorney. Defendant, Storey acted in clear and total absence of all, any jurisdiction, and rendered another **void** judgment, in favor of Defendant Stovall, on behalf of Deutsche Bank, a non-existent entity (person), **over Plaintiff(s) objections,** (motion to dismiss; for lack of jurisdiction, witness failure to appear). Defendant Storey knew, statute of limitations, had expired on 30 October 2007. Therefore, said illegal hearing, of Defendant Stovall's sham petition, and **void** judgment rendered by Storey, who demanded, another extortion fee, of three thousand dollars ($3000.), to appeal plus cost. These acts by Defendant Storey, also amounts to extortion based on "Deprivation and Obstruction of Justice", against Plaintiff(s). Defendant Storey acted in concert with all above named Defendants, in rendering said judgment without subject matter jurisdiction and said hearing was predicated on concerted actions, stemming from the void judgment, entered by Defendant Miller.

30.     On about 20 April 2009, Defendant, Bank of America Home Loans ("BOA"), without cause, sent Plaintiff(s) a "Welcome Package". However, had Plaintiff(s), a current or valid mortgage note, which Plaintiff(s) does not, BOA.

Countrywide and or Deutsche Bank failed to send the required notices, pursuant to, Title 12 USCS § 2605 (b) and (c). Nevertheless, On about 06 May 2009, Defendant Bank of America, working in concert with all named Defendant(s) with acts, predicated on the void judgment(s) entered by Defendant(s) Miller and Kent, on 15 January 2008 and 05 September 2008, respectively, sent Plaintiff(s) a threatening correspondence, to terminate Plaintiff(s) case, in the 129th District Court, Harris County, Texas.

31.     Defendant Bank of America, said threatening correspondence, sent on about 06 May 2009, was to extort from Plaintiff(s), forty-five thousand, five hundred dollars ($45,500.), based on an expired and void, past contract lien, attendant to Plaintiff(s) subject real property. Defendant Bank of America, working in concert with Defendant Danner demanded, said extortionate payment, from Plaintiff(s); or face termination, of Plaintiff(s) Cause No. 2008-34011, assigned to Defendant Gomez, in the 129th District Court, Harris County, Texas and seizure of Plaintiff(s) subject real property, that was earlier, misappropriated, by Defendant Kesler. Plaintiff(s) refused, such terrorist tactics and thereby, such refusal, caused Defendant Gomez, to terminated Plaintiff(s) Cause No. 2008-34011, by entering on 07 December 2009, his void judgment predicated on, prior void judgment by Defendant Miller. Defendant Gomez, working in concert with all named Defendant(s), intentionally and knowingly deprived Plaintiff(s) of "Due Process", in said case, without just cause. Thereby, causing Plaintiff(s) to pay exorbitant fees, to appeal Defendant Gomez, void judgment. Defendant Gomez, at all times, since case assignment, to his court, knew, Plaintiff(s) subject real property contract lien, expired, on 30 October 2007.

32.     On about 08 October 2009, Defendant Danner filed motion(s) for No-Evidence Summary Judgment and Summary Judgment against Plaintiff(s), attendant to Case No. 2008-34011, in the 129th District Court of Harris County. Defendant Danner acted in concert with all above named Defendant(s), using the void judgment entered by Defendant Miller on 15 January 2008 and Defendant Kent on 05 September 2008, to support issues raised in their motion(s) for Summary Judgment.

33.     On about 07 December 2009, Defendant Gomez acted in the clear absence of all jurisdiction, while aiding Defendant Danner, and entered a void judgment which granted Defendant Danner motion(s) for Summary Judgment. Defendant Gomez lacked

subject matter jurisdiction to enter the said judgment, in that the judgment was predicated on the unauthorized and void judgment rendered by Defendant(s) Miller and Kent, on 15 January 2008 and 05 September 2008, respectively. Defendant Mooney acted in concert with Defendants Gomez and Danner by aiding and abetting the procuring of the wrongful Summary Judgment(s) rendered by Defendant Gomez against Plaintiff(s). Explicitly, Defendant Mooney arbitrarily terminated the client relationship with Plaintiff(s) with her concerted acts, to further Defendant(s) scheme of maliciousness against Plaintiff(s). Thereby, Defendant Mooney allegedly received the package containing Defendant Danner motions for summary judgment on about 10 October 2009; refused to file a response, to Defendant Danner motions for summary judgment, refused to provide Plaintiff(s) with notice or copies of Defendant(s) said motion(s) and withheld the motion(s) from Plaintiff(s). Such complained of concerted acts and omissions on the part of Defendant Mooney provided conduit for a wrongful, adverse and void judgment to be rendered against Plaintiff(s).

**Plaintiff(s) incorporates by reference, all heretofore exhibit(s) and statement(s).**

## V. LEGAL CLAIMS

34.     The complained of concerted actions of all above named Defendant(s) stated in paragraphs 18-33, deprived Plaintiff(s) of due process and equal protection of such laws in violation of the First, Fifth and Fourteenth Amendments. Also, thereby, deprived Plaintiff(s) of their assets and property without due process of law in violation of the Fourteenth Amendment.

35.     Plaintiff(s) First Amendment rights of access to the court(s) and to petition the government for redress of grievances were violated when the Defendant(s) filed fraudulent pleadings without standing, and rendered judgments against Plaintiff(s) in the clear absence of all any jurisdiction. Plaintiff(s) were denied, deprived of their civic and civil duties to be part of society, thus, having to defend such acts of official oppression.

36.     Plaintiff(s) Fifth and Fourteenth Amendment "Rights" to due process and equal protection of law were violated when Defendant(s) singled Plaintiff(s) out for

disparate treatment from that afforded to other citizens. Defendant(s) arbitrarily deprived Plaintiff(s) of the rights to be heard and deprived Plaintiff(s) access to the courts to petition the government for redress of grievances. Further, Plaintiff(s) were denied their "Rights" to "Due Process" under Section 19, Article I, of the Texas Constitution, based on the naked assertions, asserted by Section 50(a)(6), Article XVI, of the Texas Constitution. Thereby, Texas Attorney General, Greg Abbott, refused to intervene and break-up this chain conspiracy and the refusal by the State of Texas to establish assistance for, or provide protection from, such illegal onslaught(s) verifies, the intention to "Deprive" Plaintiff(s) of their "Liberty and Property", using, all named Defendant(s).

37.    These herein named Defendant(s) acted in concert with reckless disregard for the "Rights" of Plaintiff(s), and with a callous indifference to Plaintiff(s) "Rights", with intent to violate the "Rights" of Plaintiff(s) and cause a wrongful deprivation of Plaintiff(s) property. These complained of, concerted acts, by all herein named Defendant(s) and or adverse party, caused Plaintiff(s), undue financial and economical loss, mental depression and stress, emotional stress and suffering, anguish, anxiety, frustration and humiliation.

38.    The Plaintiff(s) has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff(s) has been and will continue to be irreparably injured by the malicious misconduct of all named Defendant(s) unless this Court grants the relief, which Plaintiff(s) seeks.

## VI. PRAYER

WHEREFORE, Plaintiff(s) respectfully Prays, this Court enter; Judgment(s), Order(s), Granting Plaintiff(s):

39.    A Declaration that the acts described herein violated Plaintiff(s) "Rights" and "Due Process" under the Constitution and Laws of the United States.

40.    A preliminary and permanent injunction ordering the herein above named Defendant(s), their agents and any other person acting in concert with all named Defendant(s); to refrain from their malicious misconduct in the wrongful taking of

Plaintiff(s) assets, property and to rescind their void judgment(s) rendered in respect to all and any assets, property of Plaintiff(s).

      41.    Compensatory damages in the amount of $200,000.00 dollars against each named Defendant, individually and collectively.

      42.    Punitive damages in the amount of $400,000,000.00 dollars against each named Defendant.

      43.    A jury trial on all issues triable by jury.

      44.    Plaintiff(s) costs in this suit and any other prior related suits.

      45.    Any additional relief this Court deems just, proper, and equitable.


Respectfully Submitted

*[signature]* 23 MAR 10

SHELTON R. MODELIST
5619 Lakefield Drive
Houston, Texas 77033
Phone No. 713-733-6994


## VII. DECLARATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true. "I certify under penalty of perjury that the foregoing is true and correct. Executed on this 23rd day of March 2010, 28 U.S.C.§ 1746".

*[signature]* 23 MAR 10

SHELTON R. MODELIST
5619 Lakefield Drive
Houston, Texas 77033
Phone 713-733-6994



7160 9668 9670 0207 5744

FILE NUMBER:  20030031405205
SHELTON ROBERT MODLEIST A/K/A SHELTON ROBERT MODELIST
5619 LAKEFIELD DRIVE
HOUSTON TX 77033

# IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTACHED NOTICE.

# PLEASE READ CAREFULLY

**BARRETT BURKE WILSON CASTLE DAFFIN & FRAPPIER, L.L.P. IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**



PLAINTIFF'S
EXHIBIT
2



**BARRETT BURKE WILSON CASTLE DAFFIN & FRAPPIER, L.L.P.**
A Partnership Including
Professional Corporations
ATTORNEYS AND COUNSELORS AT LAW
15000 Surveyor Boulevard
Suite 100, Department 4000
Addison, Texas 75001

Telephone: (972) 419-1163
Telecopier: (972) 386-7673

October 30, 2003

Certified Mail  7160 9668 9670 0207 5744
SHELTON ROBERT MODLEIST A/K/A SHELTON ROBERT MODELIST
5619 LAKEFIELD DRIVE
HOUSTON TX 77033

Re:    Servicer/Creditor:      COUNTRYWIDE HOME LOANS, INC.
       Loan No.:              44328
       BBWCDF No.:           20030031405205

This law firm represents COUNTRYWIDE HOME LOANS, INC., the Servicer/Creditor, or the duly authorized agent thereof (hereinafter "Servicer"), in its mortgage banking activities in the State of Texas. We have been authorized by the Servicer to initiate legal proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan (hereinafter the "Debt").

This letter is formal notice of the following:

1.    Payment of the past due balance on the Debt has not been received by the Servicer. Because of this default, the Holder of the Note has elected to ACCELERATE the maturity of the Debt.

2.    The amount of the Debt as of the date of this notice, according to the records of the Servicer, is $41,101.28. Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write or call the Foreclosure Department of this firm at (972) 419-1163. Payment must be made in certified funds, cashier's check or money order(s).

      The creditor to whom the Debt is owed is: DEUTSCHE BANK NATIONAL TRUST COMPANY FORMERLY KNOWN AS BANKERS TRUST COMPANY OF CALIFORNIA, AS TRUSTEE FOR AAMES FUNDING CORPORATION MT2001-4

3.    All of the obligors and guarantors (if any) of the Debt have the right to reinstate the loan as provided in the Deed of Trust and as provided by Texas law. You may obtain reinstatement figures by calling the Foreclosure Department of this firm at (972) 419-1163.

4.    All of the obligors and guarantors (if any) have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure which they may have.

**PLEASE BE ADVISED THAT THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE ABOVE-REFERENCED DEBT. ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.** Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the Debt or any part thereof. If you don't dispute the Debt within that period, this firm will assume that the Debt is valid. If you do dispute the Debt by notifying this firm in writing, the firm will obtain and mail verification of the Debt to you. If within the same period, you request in writing the name and address of the original creditor, and if the original creditor is different from the current creditor, this firm will furnish you with that information.

The law does not require this firm to wait until the end of the thirty-day period before taking action to collect the Debt. If, however, you have requested verification of the Debt or the name and address of the original creditor within the time stated above, this firm will cease collection activities until such requested information has been mailed to you.

If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, the Servicer is not attempting to collect from you personally. You are being given this notice as a courtesy because your interest in the Real Estate may be affected.

Sincerely

Barrett Burke Wilson Castle Daffin & Frappier, L.L.P.



PLAINTIFF'S
EXHIBIT
2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHELTON R. MODELIST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-1180 |
| | § | |
| MICHAEL VESTAL, a/k/a DEUTSCHE | § | |
| BANK NATIONAL TRUST COMPANY, | § | |
| AS TRUSTEE FOR AAMES FUNDING | § | |
| CORPORATION; AAMES FUNDING | § | |
| CORPORATION d/b/a AAMES HOME | § | |
| LOAN; MICHAEL L. RIDDLE AND | § | |
| COUNTRYWIDE HOME LOANS | § | |
| | § | |
| Defendants | § | |

## DEFENDANT'S MOTION FOR LEAVE TO FILE COUNTERCLAIM AUTHORIZING FORECLOSURE WITHOUT PERSONAL LIABILITY

COUNTRYWIDE HOME LOANS, INC., incorrectly named as "Countrywide Home Loans" ("Countrywide"), the only remaining Defendant in this lawsuit, files this Motion for Leave to file its *Counterclaim Authorizing Foreclosure Without Personal Liability* against Plaintiff Shelton R. Modelist, and would respectfully show as follows:

## RELIEF REQUESTED

1.    Countrywide seeks leave of Court to file the attached pleading, Countrywide's Counterclaim Authorizing Foreclosure Without Personal Liability.

2.    Countrywide files this Motion for Leave in order to assert a counterclaim authorizing foreclosure. Specifically, Countrywide seeks an order allowing it to foreclose on its lien in Plaintiff's property in accordance with the Security Instrument and §51.002 of the Texas Property Code.

1023874-1 / AAMF 0015                            1

PLAINTIFF'S
EXHIBIT
OO

3.      Unless the opposing party can show prejudice, bad faith, or undue delay, a court should grant leave to file an amended pleading. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). Leave to amend should be freely given when justice so requires. B.R. 7015; FED.R.CIV.P. 15(a); *Walton v. Mental Health Ass'n*, 168 F.3d 661, 665 (3d Cir. 1999). No prejudice, bad faith, or undue delay will result from Countrywide's amending its pleadings to file this Counterclaim Authorizing Foreclosure Without Personal Liability. To the contrary, Countrywide will be unduly prejudiced if it is precluded from pleading and trying this counterclaim.

4.      Countrywide's foreclosure claim arises out of the same home equity loan transaction underlying Plaintiff's claims against Defendants in this litigation. Specifically, Countrywide is attempting to enforce the Security Instrument that Plaintiff unsuccessfully sought to invalidate by this lawsuit.

5.      Further, adjudication of the foreclosure claim in this litigation will not necessitate any additional discovery, the joinder of additional parties, or result in any other delay in this proceeding.

## PRAYER

For these reasons, Defendant respectfully prays that the Court grant it leave to file its Counterclaim Authorizing Foreclosure Without Personal Liability, attached hereto. Countrywide prays for such other and further relief, general or special, at law or in equity, to which the Court deems it justly entitled.



PLAINTIFF'S
EXHIBIT
100

Respectfully submitted,

HUGHES WATTERS ASKANASE L.L.P.

*s/Lindsay L. Lambert*
Lindsay L. Lambert    TBN: 11844225
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002-4168
(713) 759-0818 - Telephone
(713) 759-6834 - Facsimile

ATTORNEY FOR DEFENDANT,
COUNTRYWIDE HOME LOANS, INC.

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 10, 2007, I attempted to confer with Shelton R. Modelist regarding the substance of the foregoing motion. He was unavailable, therefore it is presumed he is opposed. Accordingly, this motion is presented to the Court for determination.

*s/Lindsay L. Lambert*
Lindsay Lambert

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the following, via certified mail, return receipt requested, on January 10, 2007:

Shelton R. Modelist
5619 Lakefield Drive
Houston, Texas 77033

*s/Lindsay L. Lambert*
Lindsay Lambert



After recording please mail to:
AAMES CAPITAL CORP.
ATTENTION: COLLATERAL CONTROL
350 SOUTH GRAND AVNUE
LOS ANGELES, CA 90071

_____ [Space Above This Line For Recording Data] _____

Loan No: 4881190TX                                                                                      Data ID:  109
Borrower: SHELTON ROBERT MODLEIST

THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

### This Security Instrument is not intended to finance Borrower's acquisition of the Property.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated September 21, 2001, together with all Riders to this document.

(B) "Borrower" is SHELTON ROBERT MODLEIST , A SINGLE MAN.  Borrower is the grantor under this Security Instrument.

(C) "Lender" is AAMES FUNDING CORP. DBA AAMES HOME LOAN A CALIFORNIA CORPORATION. Lender is organized and existing under the laws of the State of CALIFORNIA.  Lender's address is 350 S. GRAND AVE, STE 43            LOS ANGELES, CA 90071.  Lender includes any holder of the Note who is entitled to receive payments under the Note.  Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is MICHAEL L. RIDDLE.  Trustee's address is 717 NORTH HARWOOD, SUITE 2400, DALLAS, TEXAS  75201.

(E) "Note" means the promissory note signed by Borrower and dated September 21, 2001.  The Note states that Borrower owes Lender FORTY THOUSAND and NO/100-----Dollars (U.S. $ 40,000.00) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2031.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."



PLAINTIFF'S EXHIBIT 3A

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044.1    1/01       (Page 1 of 14 Pages)

(G) **"Extension of Credit"** means the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution and all the documents executed in connection with the debt.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Texas Home Equity Condominium Rider
☐ Texas Home Equity Planned Unit Development Rider
☐ Other:

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.

(P) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.



Loan No: 4881190TX                                                                  Data ID: 109

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the County of HARRIS:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 5619 LAKEFIELD DRIVE,                                    HOUSTON,
                                                  [Street]                                          [City]
TEXAS                               77033                          ("Property Address"):
                                  [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest, Escrow Items, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.



PLAINTIFF'S
EXHIBIT

3A

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.



PLAINTIFF'S EXHIBIT
3A

Loan No: 4881190TX                                                      Data ID: 109

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

PLAINTIFF'S EXHIBIT 3A

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM
Form 3044.1   1/01        (Page 5 of 14 Pages)

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.   Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.   Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.   It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.   No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.   These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.   If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Assignment of Miscellaneous Proceeds; Forfeiture.**   All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.   During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.   Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.   Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.   If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.   Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.   Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

**PLAINTIFF'S EXHIBIT 3A**

**TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3044.1    1/01                              (Page 7 of 14 Pages)

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). **Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.**

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

14.  **Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15.  **Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the laws of Texas.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16.  **Borrower's Copies.**  Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

17.  **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18.  **Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender a reasonable time to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have a reasonable time to comply, with any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply. Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender a reasonable time to comply. Borrower will cooperate in reasonable efforts to effectuate any compliance. Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of th[...] The provision of this Section 19 will supersede any inconsistent provision of the Note or th[...]

PLAINTIFF'S
EXHIBIT
13A

Loan No:  4881190TX                                                                                    Data ID:  109

20.  **Hazardous Substances.**  As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

21.  **Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.

The lien evidenced by this Security Instrument may be foreclosed upon only by a court order.  Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference.  The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.

22.  **Power of Sale.**  It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property.  It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law.  Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court.  To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale.  Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law.  Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law.  Sale shall be made at public vendue.  The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month.  Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines.  Lender or its designee may purchase the Property at any sale.  In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

PLAINTIFF'S
EXHIBIT
3 A

TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Fredd[...]                                         (Page 11 of 14 Pages)

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.



Loan No:  4881190TX                                                                      Data ID:  109

    **29.  Acknowledgment of Waiver by Lender of Additional Collateral.**  Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower *(except in the event of actual fraud),* for the Extension of Credit.  *This waiver includes, but is not limited to, any* (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

    [DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY.  YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]

> YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.

.....................................................................(Seal)
SHELTON ROBERT MODLEIST —Borrower



TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044.1    1/01      (Page 13 of 14 Pages)

———————————————————  [Space Below This Line For Acknowledgment(s)]  ———————————————————

State of TEXAS                                          §
County of HARRIS                                        §

This instrument was acknowledged before me on the _21_ day of __September__, 20_01_ by

SHELTON ROBERT MODLEIST

_____
                                                              Notary Public

_____
Ronald Cl                                              (Printed Name)

[Personalized Seal]
My commission expires:___3/23/02___



Loan No: 4881190TX
Borrower: SHELTON ROBERT MODLEIST

Data ID:  109

## LEGAL DESCRIPTION

Paste legal description here then photocopy.  Attach to the document to be recorded and file as one instrument.



PLAINTIFF'S
EXHIBIT
3A

Loan No: 4881190TX
Borrower: SHELTON ROBERT MODLEIST

Data ID: 109

## LOAN AGREEMENT RIDER

THIS LOAN AGREEMENT RIDER is made this 21st day of September, 2001, and is incorporated by and into and shall be deemed to amend and supplement any and all documents constituting "Loan Agreements" as defined by Section 26.02 of the Texas Business & Commerce Code by and between SHELTON ROBERT MODLEIST ("Borrower")

and AAMES FUNDING CORP. DBA AAMES HOME LOAN A CALIFORNIA CORPORATION ("Lender") of the same date and covering the property located at
5619 LAKEFIELD DRIVE,
HOUSTON, TEXAS  77033.

In addition to the covenants made in the Loan Agreements, Borrower and Lender further covenant and agree as follows:

1.  The rights and obligations of Borrower and Lender shall be determined solely from the written Loan Agreements, and any prior oral agreements between Lender and Borrower are superseded by and merged into the Loan Agreements.

2.  The Loan Agreements may not be varied by any oral agreements or discussions that occur before, contemporaneously with, or subsequent to the execution of the Loan Agreements.

3.  The following Notice is provided pursuant to Section 26.02 of the Texas Business & Commerce Code:

THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

AAMES FUNDING CORP. DBA AAMES HOME
LOAN A CALIFORNIA CORPORATION

By: _____

Its: _____



SHELTON ROBERT MODLEIST —Borrower

PLAINTIFF'S EXHIBIT
3A

Do Not File Of Record

# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

**MICHAEL N. MILBY**
CLERK OF COURT
P.O. Box 61010
HOUSTON, TEXAS 77208

www.txs.uscourts.gov



Shelton R Modelist
5619 Lakefield Dr.
Houston TX 77033

---

Case: 4:05-cv-01180    Instrument: 182    (2 pages)   pty
Date: Jan 15, 2008
Control: 080116603
Notice: The attached order has been entered.

---



PLAINTIFF'S
EXHIBIT
C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SHELTON MODELIST,                          §
                                           §
            *Plaintiff*,                   §
                                           §
v.                                         §          CIVIL ACTION H-05-1180
                                           §
COUNTRYWIDE HOME LOANS, *et al.*           §
                                           §
            *Defendant*.                   §

## AMENDED FINAL JUDGMENT

On the 10th day of September, 2007, the court called this civil action to trial. Plaintiff Shelton

R. Modelist appeared and represented himself *pro se*. Defendant Countrywide Home Loans

appeared by and through its counsel of record. This case was tried before a jury, the Honorable Gray

H. Miller, District Judge, presiding. The issues having been duly tried and the jury having duly

rendered its verdict, it is therefore

ORDERED that Plaintiff Shelton R. Modelist takes nothing as to his claims asserted against

Defendant Countrywide Home Loans. It is further

ORDERED that the lien on that certain real property described as:

> LOT 24, IN BLOCK 7 OF THE CRESTMONT ADDITION,
> SECTION 2, A SUBDIVISION IN HARRIS COUNTY, TEXAS
> ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED
> IN VOLUME 56, PAGE 30 OF THE MAP RECORDS OF HARRIS
> COUNTY, TEXAS



and which has the address of 5619 Lakefield Drive, Houston, Texas 77003, is hereby established.

It is further

ORDERED that Defendant Countrywide Home Loans, as mortgage servicer on behalf of the

owner and holder of the Texas Home Equity Fixed Rate Note and Security Instrument, shall be

allowed to foreclose pursuant to the Texas Home Equity Security Instrument and TEXAS PROPERTY CODE § 51.002.  It is further

ORDERED that Plaintiff shall not be liable for any deficiency resulting from the foreclosure sale authorized herein.

This FINAL JUDGMENT disposes of all issues and all parties before the court.

Signed at Houston, Texas on January 15, 2008.

_____
Gray H. Miller
United States District Judge



2

*p.3*

CONFIRMED FILE DATE: 10/13/2009

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

5619 LAKEFIELD DRIVE
HOUSTON, TX 77033
2003003140520S

### SUBSTITUTE TRUSTEE'S DEED

GRANTOR(S):
SHELTON ROBERT MODLEIST
AKA SHELTON ROBERT MODELIST

ORIGINAL MORTGAGEE:
AAMES FUNDING CORP. DBA AAMES HOME LOAN A
CALIFORNIA CORPORATION

CURRENT MORTGAGEE:
DEUTSCHE BANK NATIONAL TRUST COMPANY
FORMERLY KNOWN AS BANKERS TRUST COMPANY
OF CALIFORNIA, AS TRUSTEE FOR AAMES FUNDING
CORPORATION MT2001-4

MORTGAGE SERVICER:
COUNTRYWIDE HOME LOANS, INC.

RECORDED IN:
CLERK'S FILE NO. Y339167

PROPERTY COUNTY/LEGAL DESCRIPTION: HARRIS

DEED OF TRUST DATE: September 21, 2001
DATE OF SALE OF PROPERTY: June 3, 2008

TIME OF SALE: 1:42  AM/PM

PLACE OF SALE OF PROPERTY:
DESIGNATED AREA AT THE HARRIS COUNTY FAMILY
LAW CENTER PER COMMISSIONER'S COURT ORDER
DATED 03/18/03, CLERK'S FILE NO. W516420 OR AS
FURTHER DESIGNATED BY THE COUNTY
COMMISSIONERS

GRANTEE/BUYER:
DEUTSCHE BANK NATIONAL TRUST COMPANY
FORMERLY KNOWN AS BANKERS TRUST COMPANY
OF CALIFORNIA, AS TRUSTEE FOR AAMES FUNDING
CORPORATION MT2001-4

GRANTEE/BUYER'S MAILING ADDRESS:
3 PARK PLAZA, 16TH FLOOR
IRVINE, CA 92714

AMOUNT OF SALE: $ 38,632.50

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee of the Note, through the Mortgage Servicer, accordingly has appointed Substitute Trustee and requested Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for amount of sale in the manner prescribed by law. The subject sale was conducted no earlier than 1:00PM as set forth in the Notice of Substitute Trustee's Sale and was concluded within three (3)hours of such time. All matters, duties and obligations of Mortgagee were lawfully performed.

Substitute Trustee, subject to any matters of record, and for amount of sale paid by buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. Substitute Trustee hereby sells the above referenced property AS IS without any expressed or implied warranties, except as to warranties of title, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §§ 51.002 and 51.009.

WITNESS MY HAND, this June 03, 2008.



REX KESLER,
Substitute Trustee

STATE OF TEXAS
COUNTY OF HARRIS

Before me, the undersigned Notary Public, on this day personally appeared REX KESLER, _____ as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification described as _____, to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this June 03, 2008.

My Commission Expires:

_____



Notary Public for the State of TEXAS

Printed Name of Notary Public

CYNTHIA A. SANCHEZ
NOTARY PUBLIC
State of Texas
My Comm. Exp. 11-13-2009

**HOLD FOR :**
**BDFTE**

|||||| STD2003003140520S

PLAINTIFF'S EXHIBIT
1

Substitute Trustee's Deed (EQUITY)
SubTrusteeDeedCountyDT.rpt - (04/23/08) / Ver-04

Certified Document Number: 40011017 - Page 1 of 3

20030031405205    

LOT 24, IN BLOCK 7, OF THE CRESTMONT ADDITION, SECTION 2, A SUBDIVISION IN HARRIS COUNTY, TEXAS,
ACCORDING TO THE MAJOR PLAT THEREOF, RECORDED IN VOLUME 56, PAGE 30, OF THE MAP RECORDS OF HARRIS
COUNTY, TEXAS.

HOLD FOR :
    BDFTE

PLAINTIFF'S
EXHIBIT

|

STD20030031405205

*Substitute Trustee's Deed  (EQUITY)*
*SubTrusteeDeedCountyDT.rpt - (04/23/08) / Ver-04*

5619 LAKEFIELD DRIVE
HOUSTON, TX 77033                                                    20030031405205

# AFFIDAVIT

STATE OF     TEXAS       }
COUNTY OF    DALLAS      }

BEFORE ME, the undersigned authority on this day personally appeared Jose Trevino, who after being duly sworn, deposed and stated:

1.  I am an employee of National Default Exchange, L.P., a subsidiary of BARRETT DAFFIN FRAPPIER TURNER & ENGEL, L.L.P., attorney for COUNTRYWIDE HOME LOANS, INC. at the time of the events hereinafter set forth and make this affidavit for the purpose of declaring the incidents of statutory and contractual compliance of the entity or entities set out below.

2.  This affidavit is made with respect to the foreclosure of that certain Deed of Trust dated September 21, 2001, recorded in CLERK'S FILE NO. V339167, Real Property Records, HARRIS. County, TEXAS, executed by:

    AKA SHELTON ROBERT MODELIST
    SHELTON ROBERT MODLEIST

    to MICHAEL L RIDDLE, Trustee(s) to secure payment of a Note to AAMES FUNDING CORP. DBA AAMES HOME LOAN A CALIFORNIA CORPORATION.

3.  COUNTRYWIDE HOME LOANS, INC. is the Mortgage Servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY FORMERLY KNOWN AS BANKERS TRUST COMPANY OF CALIFORNIA, AS TRUSTEE FOR AAMES FUNDING CORPORATION MT2001-4, the Mortgagee of the indebtedness secured by said Deed of Trust. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a current servicing agreement with the Mortgagee.

4.  To the best of my knowledge and belief, proper notice of default was served prior to acceleration of the indebtedness. All obligations and duties of the Mortgage Servicer were performed in the manner required by law and all notices were served on each debtor at the last known address of each such debtor.

5.  To the best of my knowledge and belief, the mortgagors holding an interest in the above described property were not on active duty with any branch of the Armed Forces of the United States or were not protected by the Servicemembers Civil Relief Act on the date of the Trustee's Sale and were alive on the date of such sale.

6.  At the instructions and on behalf of the Mortgage Servicer, notice of acceleration of indebtedness and Trustee's Sale was served on each debtor obligated on the debt, in strict compliance with the Texas Property Code, by certified mail at least twenty-one (21) days prior to the date therein specified for sale at the last known address of each such debtor.

7.  At the instructions and on behalf of the Mortgage Servicer, Notice of Trustee's Sale was filed with the County Clerk in the county or counties in which the subject property is situated and copies thereof posted at said courthouse(s) as required by law and in the manner specified by ordinance and custom.

DATED: June 03, 2008



AFFIANT: Jose Trevino

STATE OF     TEXAS       }
COUNTY OF    DALLAS      }

Sworn to and subscribed before me, the undersigned Notary Public, on this day personally appeared Jose Trevino, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___4___ day of     June    ,    2008   .

My Commission Expires:

Notary Public for the State of TEXAS

_____

Printed Name of Notary Public



RETURN TO:
    BARRETT DAFFIN FRAPPIER
    TURNER & ENGEL, L.L.P.
    15000 Surveyor Boulevard, Suite 100
    Addison, Texas 75001
    AFFIDAVIT - 1038
    Affidavit-BatchPrint.rpt - (04/23/08) / Ver-08

STA2003003405205



I, Loren Jackson, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date
Witness my official hand and seal of office
this _____ December 11, 2009 _____

Certified Document Number:  ___43611817__ (Total Pages 3)

LOREN JACKSON, DISTRICT CLERK
HARRIS COUNTY, TEXAS



In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

# HOME EQUITY POSTING WITH ORDER ATTACHED

5619 LAKEFIELD DRIVE
HOUSTON TEXAS 77033                                                                 20030031405205

## NOTICE OF SUBSTITUTE TRUSTEE SALE
*(See TEX. CONST. art. XVI, § 50a(6) Order attached)*

Deed of Trust
    Date: September 21, 2001

Grantor(s):
    AKA SHELTON ROBERT MODELIST
    SHELTON ROBERT MODLEIST

Original Mortgagee:
    AAMES FUNDING CORP. DBA AAMES HOME LOAN A CALIFORNIA CORPORATION
    350 S. GRAND AVE, STE 43
    LOS ANGELES CALIFORNIA 90071

Current Mortgagee:
    DEUTSCHE BANK NATIONAL TRUST COMPANY FORMERLY KNOWN AS BANKERS TRUST COMPANY OF
    CALIFORNIA, AS TRUSTEE FOR AAMES FUNDING CORPORATION MT2001-4
    3 PARK PLAZA, 16TH FLOOR
    IRVINE CALIFORNIA 92714

Mortgage Servicer:
    COUNTRYWIDE HOME LOANS, INC.

Recorded in:    CLERK'S FILE NUMBER V339167

Property County: HARRIS County, Texas

Legal Description:
    SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

Date of Sale: June 3, 2008

Earliest Time Sale will Begin: 1:00PM

Place of Sale of Property:
    DESIGNATED AREA AT THE HARRIS COUNTY FAMILY LAW CENTER PER COMMISSIONER'S COURT ORDER
    DATED  03/18/03,  CLERK'S  FILE  NO.  W516820  OR  AS  FURTHER  DESIGNATED  BY  THE  COUNTY
    COMMISSIONERS

The Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified. The sale
will begin at the earliest time stated above or within three (3) hours after that time.

COUNTRYWIDE HOME LOANS, INC. is acting as the Mortgage Servicer for DEUTSCHE BANK NATIONAL TRUST
COMPANY FORMERLY KNOWN AS BANKERS TRUST COMPANY OF CALIFORNIA, AS TRUSTEE FOR AAMES
FUNDING CORPORATION MT2001-4, who is the Mortgagee of the Note and Deed of Trust associated with the above referenced
loan. COUNTRYWIDE HOME LOANS, INC., as Mortgage Servicer, is representing the Mortgagee, whose address is:
    DEUTSCHE BANK NATIONAL TRUST COMPANY FORMERLY KNOWN AS BANKERS TRUST COMPANY OF
    CALIFORNIA, AS TRUSTEE FOR AAMES FUNDING CORPORATION MT2001-4
    COUNTRYWIDE HOME LOANS, INC.
    PTX-C-32
    7105 CORPORATE
    PLANO TX 75024

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to
the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer
any resulting foreclosure of the property securing the above referenced loan.

Dated this May 12, 2008

---

    REX KESLER, T.REDER, J. FOLLIS OR N. SANCHEZ
    Substitute Trustee
    c/o BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP
    15000 Surveyor Boulevard, Suite 100
    Addison, Texas 75001



PLAINTIFF'S
EXHIBIT

CC

200300031405205

**EXHIBIT "A"**

LOT 24, IN BLOCK 7, OF THE CRESTMONT ADDITION, SECTION 2, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAJOR PLAT THEREOF, RECORDED IN VOLUME 56, PAGE 30, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.





7160 9668 9670 1783 9263

FILE NUMBER:  20030031405205
SHELTON ROBERT MODLEIST
AKA SHELTON ROBERT MODELIST
5619 LAKEFIELD DRIVE
HOUSTON TX  77033

# IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTACHED NOTICE.

# PLEASE READ CAREFULLY

**BARRETT BURKE WILSON CASTLE DAFFIN & FRAPPIER, L.L.P. IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**



PLAINTIFF'S
EXHIBIT
C

HE1001 - 03/03



NOS20030031405205

**MICHAEL N. MILBY**
CLERK OF COURT
P.O. Box 61010
HOUSTON, TEXAS 77208

www.txs.uscourts.gov



Shelton R Modelist
5619 Lakefield Dr.
Houston TX 77033

---

Case: 4:08-cv-00362    Instrument: 22    (1 pages)   pty
Date: Sep 5, 2008
Control: 08096545
Notice: The attached order has been entered.

---



IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| SHELTON R. MODELIST | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-362 |
| | § | |
| ACCREDITED HOME LENDERS, INC., | § | |
| ET AL. | § | |

## FINAL JUDGMENT

For the reasons stated in this Court's Opinion and Order entered this date, it is **ORDERED** and **ADJUDGED** that the Plaintiff, Shelton R. Modelist, take nothing, that the action be **DISMISSED**, with prejudice, and that the Defendants **RECOVER** of the Plaintiff all costs of action.

This is a **FINAL JUDGMENT**.

**DONE** at Houston, Texas this ____4th____ day of September, 2008.

_____
SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE



JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

SHELTON R. MODELIST

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

713 733 6994

5619 LAKE FIELD HOUSTON TX 77033

## DEFENDANTS

GRAY MILLER

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☒ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☒ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
CIVIL RIGHTS SECTION 1983

Brief description of cause:
DUE PROCESS VIOLATIONS

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
23 MARCH 2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____